UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JOSHUA L. CAMPBELL,                    )
                                       )
                    Movant,            )
                                       )
        vs.                            )        Case No. 1:13CV00169 SNLJ
                                       )
UNITED STATES OF AMERICA,              )
                                       )
                    Respondent.        )

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set

aside or correct sentence by Joshua L. Campbell, a person in federal custody. On

September 10, 2012, Campbell plead guilty before this Court to the offense of felon in

possession of ammunition and felon in possession of firearms and, on December 10,

2012, this Court sentenced Campbell to the Bureau of Prisons for a term of 120 months, a

sentence within the sentencing guideline range. Campbell's § 2255 motion, which is

based on several allegations of ineffective assistance of counsel, is fully briefed and ripe

for disposition.

## FACTS

**A. The Indictment.**

On April 19, 2012, a Grand Jury in the Eastern District of Missouri, Southeastern

Division, returned an Indictment against Joshua L. Campbell, charging him in Count I

with being a Felon in Possession of Ammunition in violation of Title 18, United States

Code, § 922(g)(1). Count II charged Campbell with being a Felon in Possession of Two

Firearms in violation of Title 18, United States Code, § 922(g)(1). At that time, Campbell was in the custody of the State of Missouri on another felony charge. He was transferred from state custody pursuant to a writ in order to face the federal charge. His Initial Appearance was before United States Magistrate Judge Lewis M. Blanton on May 2, 2012. The Federal Public Defender's office was appointed to represent Campbell. Assistant Federal Defender Scott F. Tilsen ("AFPD Tilsen") filed an Entry of Appearance in the federal case. AFPD Tilsen appeared on behalf of Campbell at an arraignment on May 7, 2012. At that arraignment, Campbell pled not guilty to the charges. Judge Blanton set Campbell's pretrial motions hearing for June 1, 2012.

**B. Pretrial Motions.**

On May 21, 2012, AFPD Tilsen filed a motion asking for an extension of time to file pretrial motions. That motion was granted by Judge Blanton on May 23, 2012. A new hearing date of June 13, 2012, was set by the Court for an evidentiary hearing for any pretrial motions.

On June 12, 2012, AFPD Tilsen filed his second motion for an extension of time to file pretrial motions. That motion was granted on June 13, 2012, with a new evidentiary hearing date of June 27, 2012.

On June 18, 2012, AFPD Tilsen filed a Waiver of Filing of Pretrial Motions on behalf of Campbell. On June 27, 2012, Campbell appeared before Judge Blanton and requested more time to consider the filing of pretrial motions. His motion was granted and a new evidentiary date of July 3, 2012, was set by the Court. On July 3, 2012, Campbell appeared before Judge Blanton and waived his right to file pretrial motions.

After that waiver, this Court set Campbell's case for a plea hearing on September 10, 2012.

**C. The Plea Agreement.**

Campbell and the Government reached a plea agreement that was reduced to writing. A copy of that Plea Agreement is attached to this Response as Exhibit 1. That Plea Agreement sets out the parties' bargain and understandings as to the disposition of Campbell's case.

Campbell agreed to plead guilty to both counts charged in the Indictment. The Government agreed not to charge Campbell with any other crimes related to the possession of firearms and/or ammunition on the dates of the offense conduct for Counts I and II. Each party reserved their right to request a sentence above or below the Guidelines range. (Exh. 1, ¶2)

Campbell agreed that he was a previously convicted felon at the times of the offense conduct, that the firearms and ammunition listed in the Indictment affected interstate commerce, and that he was in possession of the ammunition listed in the Indictment in Count I on November 14, 2011, and that he was in possession of two firearms listed in Count II on December 9, 2011. (Exh. 1, ¶ 4)

The parties did not have any agreement as to the offense levels applicable to Campbell's conduct. The parties agreed that the District Court would decide the offense levels at the time of sentencing. (Exh. 1, ¶ 6) The parties did not agree on Campbell's criminal history. (Exh. 1, ¶ 6) Campbell waived his right to appeal any pretrial issues, but reserved his right to appeal any sentencing issue. (Exh. 1, ¶ 7)

Campbell agreed that he waived his right to file any post-conviction pleading, including a § 2255 petition, except for claims of prosecutorial misconduct or ineffective assistance of counsel. That waiver was set out as follows:

> The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

(Exh. 1, § 7b)

### D. Guilty Plea Hearing.

Campbell and his attorney, AFPD Tilsen, appeared before this Court on September 10, 2012, in order to enter into a plea agreement with the Government. Campbell pled guilty to both counts of the Indictment. This Court set the case for a sentencing hearing on December 10, 2012.

### E. The Presentence Investigation Report.

After the plea, the District Court ordered that a Presentence Investigation Report (P.S.R.) be prepared. United States Probation Officer Sherry L. Persinger prepared that report for the District Court. The P.S.R. recommended that Campbell receive a base offense level of 24, pursuant to U.S.S.G., § 2K2.1(a)(2), because Campbell had previously been convicted of the felonies of Attempted Burglary and Burglary (crimes of violence) and Possession of a Chemical With Intent to Create a Controlled Substance (a controlled substance offense).[1] The P.S.R. also found that the firearms possessed in

---

[1] Normally, a defendant with three prior felony convictions for violent felonies and/or drug trafficking crimes must be sentenced to a statutory, minimum term of imprisonment of 15years pursuant to Title 18, U.S.C., § 924(e). However, the drug trafficking convictions must carry a maximum term of imprisonment of at least 10 years in order to be classified as a "drug trafficking crime" as that term is defined in § 924(e). Campbell's felony conviction for

Count II were stolen, resulting in the addition of two levels pursuant to U.S.S.G., §

2K2.1(b)(4)(A). Four levels were added because the defendant possessed the firearms in

Count II in connection with the felony offense of Burglary, pursuant to U.S.S.G., §

2K2.1(b)(6)(B). Campbell received a reduction of three levels because he accepted

responsibility in a timely manner. Campbell's Total Offense Level was set at 27. (P.S.R.,

¶ 24 – 34)

The P.S.R. also reflected previous convictions for Campbell, detailed as follows.

On December 19, 1996, Campbell was convicted of the felonies of Stealing, Burglary and

the misdemeanor of Stealing Without Consent in the Circuit Court of Madison County,

Missouri. Campbell was originally given a suspended imposition of sentence for the

felony convictions and was placed on probation for five years. That probation was

revoked on March 26, 1998, with Campbell receiving a sentence of imprisonment of five

years. This Burglary conviction was determined to be a "crime of violence" for purposes

of raising the base offense level to 24 pursuant to U.S.S.G., § 2K2.1(a)(2). (P.S.R., & 37)

On March 27, 1998, Campbell was convicted of the felony of Stealing by Deceit

in the Circuit Court of Madison County, Missouri, in Case Number CR798-530F.

Campbell was sentenced to a term of imprisonment of five years for that conviction.

(P.S.R., ¶ 38)

On October 22, 1999, Campbell was convicted of the felony of Attempted

Burglary in the Circuit Court of St. Francois County, Missouri, in Case Number CR799-

---

Possession of a Chemical With Intent to Create a Controlled Substance was a Class C felony with a maximum term of imprisonment of seven years; therefore, it did not qualify as a conviction predicate for the statutory minimum sentence under § 924(e). However, that crime was a "controlled substance" offense, resulting in a base offense level of 24 for this offense pursuant to U.S.S.G., § 2K2.1(a)(2).

501F. This offense is classified as a crime of violence for the purposes of the enhancement of Campbell's base offense level to 24 pursuant to U.S.S.G., § 2K2.1(a)(2). Campbell was sentenced to a term of imprisonment of three years for this conviction. (P.S.R., ¶39)

On December 19, 2003, Campbell was convicted of the felony of Possession of a Chemical With Intent to Create a Controlled Substance in the Circuit Court of Washington County, Missouri, in Case Number 03CR611323. This crime was classified as a "controlled substance" offense for purposes of raising the base offense level to 24 pursuant to U.S.S.G., § 2K2.1(a)(2). As noted above, because this offense was a Class C felony, with a maximum term of imprisonment of seven years, it did not qualify as a drug trafficking crime as that term is defined in Title 18, U.S.C., § 924(e). Campbell was sentenced to a term of imprisonment of two years for this conviction. (P.S.R., ¶ 40)

On September 17, 2009, Campbell was convicted of the felony of Tampering With a Motor Vehicle – First Degree, in the Circuit Court of Madison County, Missouri, in Case Number 08MD-CR00228-01. Campbell was sentenced to a term of imprisonment of seven years for this conviction. (P.S.R., ¶ 41)

On December 15, 2011, Campbell was convicted of the misdemeanor of Stealing in the Municipal Court of Fredericktown, Missouri, in Case Number MU-9S-11-588-MO. Campbell was sentenced to serve ten days in jail for this offense. This offense was the conduct charged in Count I of the Indictment. (P.S.R., ¶42)

The convictions reported above resulted in Campbell receiving 17 criminal history points. Campbell received two additional points because the instant federal offense was

committed while he was under a criminal justice sentence. Campbell's Total Criminal History score was 19, resulting in a Criminal History Category of VI. (P.S.R., ¶ 44 – 46)

The P.S.R. determined that Campbell's Guideline sentencing range was 130 to 162 months, with a Total Offense Level of 27 and a Criminal History Category of VI. (P.S.R., ¶ 77)

**F. Objections to the Presentence Investigation Report.**

On November 19, 2012, Campbell filed his objections to the Presentence Investigation Report. Campbell objected to ¶ 25, which added two levels because the firearms involved in the offense were stolen, pursuant to U.S.S.G., § 2K2.1(b)(4)(A). He also objected to ¶ 26, which added four levels because Campbell possessed the firearms in connection with another felony offense; that of Burglary, pursuant to U.S.S.G., § 2K2.1(b)(6)(B).

On November 30, 2012, Campbell filed his Sentencing Memorandum (Exh. 2) in which he raised another objection. Campbell asserted that his state conviction for Attempted Burglary should not have been considered as a "crime of violence" that would elevate his base offense level to 24, pursuant to U.S.S.G., § 2K2.1(a)(2). Attached to Campbell's Sentencing Memorandum was a copy of the investigative report of Detective Rebecca L. McFarland. That report was a summary of a statement given to the detective by Campbell on February 16, 2012. In that statement, Campbell reported to the detective that Johnny Starkey had given Campbell the two guns that Campbell was convicted of possessing in the instant offense. Campbell said that Starkey had falsely reported a burglary at his house and asked Campbell to help him sell certain items that he had

reported stolen and received an insurance payment for. Campbell said that his payment for assisting Starkey in the insurance scam was the two firearms, plus one other black powder gun. Campbell reported that he had the firearms in his possession since the summer of 2011, when Starkey made the burglary report. Campbell stated that Starkey had given him a written bill of sale for the two firearms, but that he didn't know where the bill of sale was at the time of the interview.

Campbell's contention was that the firearms were not stolen and that he did not burglarize Starkey's house to obtain the firearms. Campbell's objections required the Government to introduce evidence to support the sentencing enhancements. That evidence was presented during the sentencing hearing.

**G. Sentencing Hearing.**

On December 10, 2012, this Court conducted a sentencing hearing. The Government called two witnesses to testify to establish a factual basis for the Presentence Investigation Report and to address Campbell's objections that the firearms were stolen by him. The first witness was Johnny Starkey.

Starkey testified that Joshua Campbell lived with Starkey and his wife, Sheralyn Gorse, at Starkey's house near Marquand, Missouri, beginning around July, 2011. Campbell's girlfriend, Whitney Hicks and her three children moved into the Starkey home with Campbell. Campbell, Hicks and the children lived in the basement of the home. Both Campbell and Hicks were related to Starkey. At that time, Starkey had some firearms stored in his bedroom in that home. They were a .303 caliber firearm, a SKS that

belonged to Starkey's father-in-law, a .22 caliber revolver, a .22 caliber pistol and a black powder firearm. (Sent. Tr., pp. 6 – 10, 16)

Starkey testified that he never gave any of those firearms to Campbell. Shortly before the end of 2011, Starkey began talking with Campbell and Hicks about their moving out of his house. In November, 2011, Starkey gave Campbell an ultimatum that they needed to move. Campbell told Starkey that he had a new home being set up but needed a little more time to do so. In December, 2011, Starkey returned to his home to find that Campbell and Hicks had moved out and that several items in his home were missing. The personal property of Starkey and his wife that was missing included a television from the living room, his son's change, some Christmas money, and the two firearms listed in Count II of the Indictment. Those firearms were a Norinco, 7.62x39 mm caliber rifle (also known as an SKS) and a Rohm, .22 caliber revolver. The black powder rifle was also missing. After Campbell was arrested, the missing property was found in Campbell's vehicle. (Sent. Tr., pp. 10 – 15)

Starkey stated that he had been the victim of another theft when he was working on his present house. At that time, Starkey made a claim for the property that was stolen from his insurance company. Starkey was asked by Campbell's attorney if he was aware that Campbell claimed that Starkey gave him the guns in exchange for Campbell's help with the theft. Starkey denied that he gave the guns to Campbell. (Sent. Tr., pp. 18, 19)

The Government then called Whitney Hicks to testify. She stated that in the fall and the beginning of December, 2011, she and Campbell had been living in Johnny Starkey's home. She said that on the day she and Campbell were arrested, they were

moving out of Starkey's home. Hicks had carried her possessions and her children's things out of the home. She said that Starkey carried out a blanket that was wrapped around some firearms. Starkey also loaded the living room television, which was a large, flat-screen TV. They had loaded their possessions into a pickup and were driving away from the Starkey home. An officer tried to pull them over. Starkey, who was driving, fled for a while, then pulled the truck over and ran away, leaving Hicks and her three children with the truck. Hicks reported that Campbell had stated that he and Starkey had some kind of agreement about the firearms in the truck. Campbell told her about that agreement the morning that he took the firearms. Hicks knew that the firearms belonged to Starkey. (Sent. Tr., pp. 24 – 39)

After hearing the evidence, this Court overruled Campbell's objections to the Presentence Investigation Report, finding that the allegations that the firearms described in Count II were stolen was true and correct. (Sent. Tr., pp. 43 – 44) The Court found that Campbell's Total Offense Level was 27, his Criminal History Category was VI, and that his Guideline range was 130 to 162 months. (Sent. Tr., p. 44)

After hearing sentencing arguments, this Court imposed a sentence of imprisonment of 120 months for each of Counts I and II, to be served concurrently with each other, but consecutively to a State of Missouri undischarged sentence. (Sent. Tr., p. 51) this Court also addressed Campbell's other P.S.R. objection, finding that his burglary conviction was a crime of violence. (Sent. Tr., pp. 55, 56) After imposing the sentence, this Court informed Campbell that he had a right to appeal his sentence, but that appeal

must be filed within 14 days from the date of sentencing. Campbell told the Court that he understood his appellate rights. (Sent. Tr., pp. 54, 55)

**H. The Appeal.**

Campbell did not appeal his conviction or sentence.

**I. Petition for Post-Conviction Relief Pursuant to § 2255.**

On November 21, 2013, Campbell filed his Petition under 28 U.S.C., § 2255, asking that this Court set aside his sentence, recalculate his Guideline range, impose a new, lower sentence, and make that sentence concurrent to his state sentence. Campbell raised several grounds in his § 2255 petition which will be addressed in turn.

## APPLICABLE LAW

### A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner=s factual

averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the of the case. *Id.*, at 225-6. *See also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

**B. INEFFECTIVE ASSISTANCE OF COUNSEL**

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The movant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

**DISCUSSION**

**Ground one. Allegation That Campbell Has New Evidence to Show That the**

**Firearms Were Not Stolen.**

In this ground, Campbell argues that he now has a "receipt" written by Sheralyn Gorse, which provides proof that the firearms that Campbell possessed were not stolen. Campbell claims that the receipt was written by Sheralyn Gorse. Campbell does not state that Gorse gave the receipt to him or how it came to be that Campbell received the receipt. He presupposes that the receipt refutes the Government's evidence presented at Campbell's sentencing hearing that the firearms were stolen by Campbell. However, even if Campbell's allegations are completely true, a proposition the government disputes -- he is still disqualified from receiving relief.

The general rule is that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298 (1974). Like habeas corpus, this remedy "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). It provides a remedy for jurisdictional and constitutional errors, neither of which is at issue here. Campbell's issue is merely the application of a Sentencing Guideline provision. His issue does not involve the legal range of punishment or a violation of his Constitutional rights. Beyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete

14

miscarriage of justice.'" *Id.*, quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

These principles are reflected in the text of § 2255, which the Supreme Court described as "somewhat lacking in precision" in *Davis*, 417 U.S. at 343, 94 S.Ct. 2298. A § 2255 motion may be filed by a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). The court shall grant appropriate relief if it finds "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b).

Applying these principles, the 8th Circuit and sister circuits have consistently held "that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper § 2255 claim." *Auman v. United States*, 67 F.3d 157, 161 (8th Cir.1995); *accord United States v. Pregent*, 190 F.3d 279, 284 (4th Cir.1999), and cases cited; *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir.1999); *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir.1996). Therefore, such questions "may not be re-litigated under § 2255." *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir.2000). *See also Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011).

The issue that Campbell has raised is whether a factual dispute that results in the application of an incorrect Guideline provision can be the subject of a § 2255 petition. Campbell contends that this Court made a factual error in determining that Campbell stole the firearms that he possessed. The Government contends that Campbell cannot raise this type of an issue in a § 2255 petition.

The 8th Circuit faced a similar question in *United States v. Ward*, 55 F.3d 412 (8th Cir. 1995). In that case, Ward contended that he was improperly sentenced due to an incorrect factual finding made by the district court. Ward's sentencing court found that he manufactured 989 grams of D-methamphetamine. Ward was sentenced to 115 months, a sentence within his applicable Guideline range. *Id.*, at 413. Ward did not appeal his conviction or sentence.

Ward then filed a § 2255 petition, alleging a factual error in the factual basis for the Guidelines applications. Ward argued that he actually manufactured L-methamphetamine. If the district court would have found that Ward manufactured L-methamphetamine, Ward's Guideline range would have been much less than that considered by the district court at sentencing. *Id.*

The issue raised by Ward was the same type of issue raised here by Campbell, in that Ward contended that the district court made a factual finding for calculating his Sentencing Guideline range that was incorrect. The 8th Circuit rejected Ward's claim, stating:

> Thus, even if Ward's present argument were the kind of fundamental error cognizable on collateral attack, instead of a garden-variety question of fact of the sort that will occur in almost every drug-offense sentencing, his procedural default

would prevent us from reaching the argument. As Ward recognizes, a point not properly preserved at trial or on direct appeal cannot be reached in a § 2255 proceeding unless the petitioner can show both cause for the point's not having been previously raised and prejudice from the claimed legal error. *See Frady*, supra, 456 U.S. at 167-68, 102 S.Ct. at 1594-95. Ward makes no attempt to show either cause or prejudice here. Specifically, he does not argue that trial counsel was constitutionally ineffective for failing to urge that the substance was actually L-methamphetamine. Instead, Ward seeks to invoke the "actual innocence" exception, *see Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). He is "actually innocent of the sentence," he argues, because the sentence was not based on the substance that he actually manufactured. If we were to accept this argument, every issue of fact material to a Guidelines sentence, and typically each case raises a multitude of such issues, could be litigated or relitigated on collateral attack. We reject this proposition. Justice does not require it. We see no reason whatever why this sort of contention, based as it is on evidence readily available to a defendant himself, could not easily have been made at the proper time.

*Ward*, 55 F.3d at 413-14.

Campbell has exactly the same problem as was faced by Ward. Campbell did not appeal his sentence, nor the Guideline issues, nor whether the firearm was stolen, nor whether the Government's proof was sufficient, nor any other issue related to his sentence. A § 2255 petition is not a substitute for appeal. *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1995). A mere factual dispute that affects Guidelines calculations is not cognizable in a § 2255 petition. *See Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) ("While section 2255 does provide relief for cases in which 'the sentence was in excess of the maximum authorized by law,' this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues.")

Moreover, Campbell was present during his sentencing hearing and could well have introduced his own testimony. He had the ability and the right to inform this Court

of any dispute that he had with the evidence. Instead, he chose to remain silent, which was his right, and not raise any objection to the Government's proof. Campbell, like Ward, let his chance to object to the Government's evidence go by. Campbell does not have the right to have a de novo hearing on the issue of whether the firearm was stolen. That factual issue is settled.

As noted, the general rule is that Guideline issues may not be relitigated in a § 2255 petition. However, there are a small number of exceptions to that rule, none of which Campbell meets in either his original Petition or in his Reply Brief. In *United States v. Perales*, 212 F.3d 1110 (8th Cir. 2000), this Circuit noted that there were three circumstances where a defendant might challenge Guidelines misapplication by the district court. Those circumstances are: (1) where the defendant asserts that his attorney failed to object to the incorrect application of the Guidelines; (2) the sentence is in excess of the statutory maximum authorized by statute; and (3) where the sentence imposed was an error that amounts to a miscarriage of justice. *Id.*, at 1111.

In his Petition and in his Reply, Campbell did not fault his attorney for the sentencing issue. He merely presupposes that the Court erred. His Ground in his Petition states:

> Recently came into possession of a signed bill of sale (see attachment) showing firearms were not stolen effectively dropping offense level by six points.

Campbell's Petition; p. 4.

There was no allegation that his attorney was ineffective. Without that allegation, Campbell fails to meet the conditions for relief under the first exception noted above.

18

The second exception is where the defendant contends that his sentence is above the maximum allowed for his crime. Again, Campbell has not raised this issue. And since Campbell was given a sentence of 120 months, the maximum allowed under the statute, he cannot complain that his sentence exceeded the statutory maximum.

The third exception is where the sentence imposed is a miscarriage of justice. Campbell has not raised this ground as an objection. Furthermore, this Circuit has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence (citations omitted) and the Supreme Court has not extended the exception to situations beyond those involving a petitioner's actual innocence." *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Relief based on a miscarriage of justice is available only in the extraordinary case. *Id*.

Campbell presents no convincing evidence of his *actual* innocence. Campbell had objected to the enhancement of his offense levels on the basis that he stole the firearms. The Government was put to its burden of proof to establish the basis for this enhancement. Campbell sat through the sentencing hearing in which Johnny Starkey testified that his guns turned up missing, along with several other items of his personal property, when Campbell and Whitney Hicks moved out of his home. When an officer tried to stop Campbell to arrest him the same day Campbell moved, Campbell tried to outrun the officer in his truck. When that failed, Campbell abandoned the truck and its contents and ran away. The truck contained Hicks and the property stolen from Starkey's home. Starkey testified that one of the rifles found in Campbell's truck, an SKS rifle, actually belonged to Starkey's brother in law. The other firearms found in the truck, a

.303 caliber rifle, a .22 caliber revolver, a black powder rifle and a .22 caliber pistol, belonged to Starkey, along with the other personal property found in the truck. Campbell stole the firearms, a television set, Starkey's son's change, and Starkey's Christmas cash.

The Government called Whitney Hicks to testify. She testified that Campbell loaded Starkey's personal possessions, including the television set, in the truck. She saw Campbell take the firearms out of the Starkey house wrapped in a blanket. Hicks testified that Campbell had told her that he had an agreement with Starkey about the firearms, but she knew the firearms belonged to Starkey.

Campbell sat through that entire litany of testimony without ever offering to present his own version. He had his chance to contest this evidence and declined to do so. He now presents this so-called "receipt," and claims that he was unable to obtain it because he was incarcerated. However, Campbell has been incarcerated from the beginning of this case, so it appears it wasn't a problem for him to obtain this "receipt" while he was in prison.

Only at this late date, more than a year after the sentencing hearing, does Campbell challenge the factual finding that this Court made that Campbell stole the firearms. If Campbell had wanted to contest this Court's finding that he did not steal the firearms, he should have filed an appeal on that basis. There is no miscarriage of justice.

Campbell's complaint is that this Court made an error in finding that he stole the firearms. That factual finding is not cognizable in a § 2255 petition, no matter what evidence Campbell claims to have now. Campbell does not raise this issue as either prosecutorial misconduct or ineffective assistance of counsel. Campbell waived his right

to file a § 2255 petition in his Plea Agreement, with the exception of prosecutorial misconduct or ineffective assistance of counsel.

§ 2255 allows a defendant relief from a federal sentence if this Court finds: (1) that the sentence imposed was in violation of the Constitution or laws of the United States; (2) that the Court was without jurisdiction to impose such a sentence; or (3) that the sentence was in excess of the maximum allowed by law. Campbell has not raised any of these issues in his § 2255 Petition or Reply as to this issue. His complaint is not cognizable in this type of petition.

This ground will be dismissed without a hearing.

**Ground two. Ineffective Assistance of Counsel.**

**Counsel Refused to Present Video of Campbell's Interview.**

In this ground, Campbell claims that his attorney refused to obtain a video of Campbell's interrogation by an arresting officer. He states that this video would show "prior incompetence by arresting officer." Campbell does not state any facts as to how, or why the video would have changed any result of any issue before this Court. He also fails to allege how this alleged error by his attorney affected any result in his case.

Campbell's failure to allege specific facts to support the conclusions in his § 2255 petition is a similar issue to that faced in *United States v. Johnson*, 582 F.2d 1186 (8th Cir. 1978). There, Johnson filed his § 2255 petition, alleging that his counsel failed to investigate the circumstances of his arrest, the crime itself, his hospitalization, and instead relied on the information furnished to him by the prosecution. *Id*., at 1188. The *Johnson* Court noted Johnson's failure to allege facts to support his claim:

21

> Such claimed failure must, however, be supported by factual allegations, such as the failure of counsel to interview witnesses, to seek factual information in the possession of the government, or to otherwise explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. (Citation omitted.) In the absence of any such specific allegations, Johnson's claim for relief must be denied.

*Id.*

A similar issue arose in *Parton v. Wyrick*, 614 F.2d 154 (8th Cir. 1980), a federal habeas case arising out of a Missouri conviction of the defendant for rape. Parton filed his habeas petition alleging that his attorney was ineffective for failing to conduct a scientific investigation into certain items of evidence. Parton did not allege exactly how his attorney erred, or what the investigation would reveal or how that lack of investigation caused him to suffer some prejudice in the result. The Eighth Circuit affirmed the denial of Parton's petition, noting that "[w]hen, as in this case, the habeas claim goes to counsel's trial strategy or failure to investigate facts surrounding the crime, the petitioner must allege specific incompetence and prejudice resulting therefrom." *Id.*, at 158.

Campbell has failed to provide any factual support for his claim, and even fails to state how this issue affected his case. As such, Campbell's claim will be dismissed on that ground alone.

**Ground three. Ineffective Assistance of Counsel.**

### Counsel Refused to Contact Witnesses Who Could Testify That The Defendant Was Not in Possession of the Firearms.

In this ground, Campbell makes the general claim that his attorney refused to contact or even attempt to contact witnesses who would testify that Campbell was not in

possession of the firearms. Evidently, Campbell is faulting his attorney for failing to find witnesses who would dispute Campbell's own sworn testimony. Campbell was sworn to tell the truth before he admitted, during his guilty plea hearing, that he was in possession of the firearms and ammunition mentioned in the indictment. Somehow, he faults his own attorney for failing to find witnesses that would prove that he was not truthful.

Furthermore, Campbell does not identify who these witnesses are or what they would say. He fails to make a factual statement necessary to support this claim. This issue was presented to the Eighth Circuit in *Saunders v. United States*, 236 F.3d 950 (8th Cir. 2001). In that case, Saunders claimed, in his § 2255 petition, that his attorney failed to call alibi witnesses and other witnesses who could testify that the defendant was innocent of the crime. Like Campbell, Saunders did not identify any of those witnesses and he did not state what their evidence would have been. The *Saunders* Court agreed that the district court should have dismissed his petition without a hearing, stating:

> First, the petition is simply insufficient to raise any issue as to whether trial counsel's failure to call witnesses was the result of sub-par performance by counsel. Without knowing who Saunders would have had counsel call as witnesses and what their testimony in his defense might have been, it is not possible for us – or anyone – to determine whether counsel's failure to identify (assuming trial counsel in fact failed to identify these witnesses) or to call such witnesses was reasonable at the time of trial. . . . Further, the lack of specificity as to both the identity of the conjectural witnesses and the content of their testimony prevents us from assessing whether there was prejudice to Saunders's defense as the result of counsel's performance; that is, whether there is a reasonable probability that the outcome would have been different but for counsel's alleged failings. . . . There is no way for us to consider the credibility ("including the likely impeachment") of phantom witnesses, and without an idea of what their testimony might be, we cannot evaluate their "interplay . . . with the actual defense witnesses called." . . . Thus, Saunders cannot show prejudice from the failure to call his unidentified witnesses. "Because [Sanders] made no showing of what other witnesses were available, how they would have testified,

and why such additional evidence would likely have affected the result, he has failed to prove either that counsel's assistance was ineffective or prejudice."

*Saunders*, 236 F.3d at 952-53.

Campbell faces the same disability as Saunders. He has not provided the identity of any alleged witness, nor the substance of their proposed testimony. This Court cannot evaluate Campbell's claim of ineffective assistance of counsel without that information. This issue will be dismissed without an evidentiary hearing.

**Ground four. Ineffective Assistance of Counsel.**

**Failure to Contact Whitney Hicks and Failure to Advise Properly**

**So that Campbell Would Have Accepted Plea Offer.**

The Government believes that this issue must be resolved by a hearing because it involves a factual matter regarding whether the Government actually made a plea offer to allow Campbell to plead guilty and receive a sentence of imprisonment that would run concurrently with his undischarged state sentence. The Government denies the allegations of this claim, but believes that a hearing is required. The Government requests that this Court appoint counsel for Campbell on this issue and set it for a hearing which this Court will order forthwith.

**Ground five. Base Offense Level Miscalculated.**

In this ground, Campbell claims that his base offense level was miscalculated. The Presentence Investigation Report found that Campbell's base offense level should be 24, pursuant to U.S.S.G., § 2K2.1(a)(2). Under that subsection, a defendant convicted of being a felon in possession of a firearm or ammunition (as Campbell was), and who has

two prior convictions for either a crime of violence or controlled substance offenses, should receive a base offense level of 24. Campbell had two prior felony convictions for crimes of violence, a Burglary conviction appearing at Paragraph 37, and an Attempted Burglary conviction appearing at Paragraph 39. He also has a qualifying controlled substance conviction. Campbell contends that his Attempted Burglary conviction at Paragraph 39 of the P.S.R. is not a crime of violence. His contention is without merit.

Initially, this Court notes that this issue was waived by Campbell's plea agreement in that his claim is not for ineffective assistance of counsel nor is it based on prosecutorial misconduct. Furthermore, errors of this type are not cognizable in a § 2255 petition. A recent decision of the Eighth Circuit discussed this issue in detail:

> Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (Citation omitted) Like habeas corpus, this remedy "does not encompass all claimed errors in conviction and sentencing." (Citation omitted) It provides a remedy for jurisdictional and constitutional errors, neither of which is at issue here. Beyond that, the permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; "an error of law does not provide a basis for collateral attack unless the claimed error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" (Citations omitted)
> . . .
> Applying these principles, this court and our sister circuits have consistently held "that ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim. (Citations omitted) Therefore, such questions "may not be re-litigated under § 2255." (Citation omitted)

*Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011).

In any event, Campbell is simply mistaken as to whether his felony conviction for Attempted Burglary was a crime of violence. Campbell contends that his attempted

burglary of a commercial building is not a crime of violence. He relies on the definition of a crime of violence in the Guidelines as his support for his argument. That definition states:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G., § 4B1.2(a).

Campbell points to the phrase "is burglary of a dwelling" and contends that, since his attempted burglary was not that of a building, his conviction for that offense is not a crime of violence. Campbell cites cases from other circuits that hold that burglaries of commercial buildings are not crimes of violence. However, he does not cite any Eighth Circuit cases, and for good reason. There is a split of authority on this issue, with some circuits holding that burglaries of commercial buildings are not crimes of violence and some circuits that find that those convictions are crimes of violence. The Eighth Circuit falls into the latter.

This exact question was considered in *United States v. Stymiest*, 581 F.3d 759 (8th Cir. 2009); *United States v. Bell*, 445 F.3d 1086 (8th Cir. 2006); *United States v. Haas*, 623 F.3d 1214 (8th Cir. 2010) These decisions all hold that a burglary of a commercial building is a crime of violence under the "otherwise clause" in that the crimes involve conduct that presents a serious potential risk of physical injury to another because they involve risk of injury to another comparable to that faced by defendants who commit

burglaries of dwellings, arson crimes, extortion crimes and crimes involving the use of explosives. The law is settled in this Circuit; burglaries of commercial buildings are crimes of violence. Campbell's contention is without merit. This issue will be dismissed without an evidentiary hearing.

**Ground six. Criminal History Score Was Miscalculated.**

Campbell contends that his criminal history score was improperly inflated because two points were added to his score due to his being under a criminal justice sentence for another case when the instant offense occurred.

Two levels were added to Campbell's criminal history because he committed the federal offense while under state supervision in State Case Number 08MD-CR00228-01. (See Paragraph 45; P.S.R.) That addition is required under U.S.S.G., § 4A1.1(d). Campbell makes the illogical argument that his probation supervision for that state case ended on April 15, 2011, which is prior to the date of the current federal offense. He takes that date from a state court docket sheet which states "End date: 15-Apr-2011." Evidently, Campbell is arguing that he couldn't have committed his federal offense when he was on state supervision because that supervision ended on April 15, 2011. The problem with Campbell's contention is that his probation for that offense was actually revoked on February 16, 2012. (See Paragraph 41; P.S.R.) Campbell received a state prison sentence for that revocation, a sentence he is currently serving. His contention that he was not under state supervision is belied by the record.

This issue is also a Guidelines interpretation issue which, pursuant to the authority set out in the previous discussion, is not cognizable in a § 2255 petition. This issue will be dismissed without an evidentiary hearing.

**Ground seven. Offense Levels for Count I Were Improperly Calculated.**

In this issue, Campbell contends, without any authority, that his offense levels should have been calculated separately for Counts I and II and that his offense level for Count I (felon in possession of ammunition) was overstated. Again, Campbell is incorrect as to his understanding of the rules for calculating offense levels.

U.S.S.G., § 3D1.2 states:

All counts involving substantially the same harm shall be grouped together into a single Group.
. . .
(d) Offenses covered by the following guidelines are to be grouped under this subsection:
. . .
§2K2.1

U.S.S.G., § 3D1.2.

This Guideline section requires that the offense levels for each count for firearms convictions be grouped together. This requires only one offense level calculation. The Presentence Investigation Report followed the rules required for the Calculation of Campbell's offense levels.

Campbell's argument seems to be based on his argument that he shouldn't have received Specific Offense Characteristic enhancements for Count I, the ammunition case. If that is Campbell's position, he is incorrect. The two level enhancement for possessing a stolen firearm states: (4) If <u>any</u> firearm (A) was stolen, increase by 2 levels;. The four

level enhancement for possessing a firearm or ammunition in connection with another felony offense states: If the defendant (B) used or possessed <u>any</u> firearm or ammunition in connection with another felony offense . . . increase by 4 levels. Each section requires the addition of levels if any firearm is possessed by the defendant in connection with another felony offense or is stolen. It does not require that the specific firearm or ammunition listed in the Count be used in connection with another felony offense or stolen. Any other firearm or ammunition can qualify for this purpose. The probation officer correctly followed the Guidelines requirements by assessing Specific Offense Characteristics on both counts since those additions were required. Campbell's contention is without merit. This issue will be dismissed without an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, this Court denies Campbell's § 2255 petition, without a hearing, except for the issue presented in Ground Four – whether the Government actually made a plea offer to allow Campbell to plead guilty and receive a sentence of imprisonment that would run concurrently with his undischarged state sentence. That matter will be set for hearing forthwith and counsel for defendant will be appointed.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Campell has not made a substantial showing of the denial of a federal constitutional right except for the issue presented in Ground Four which will be set for evidentiary hearing.

**SO ORDERED** this 23rd day of September, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE